Richard J. McCord, Esq.
Robert D. Nosek, Esq.
CERTILMAN BALIN ADLER & HYMAN, LLP
Counsel to the Chapter 7 Trustee
90 Merrick Avenue
East Meadow, NY 11554
Telephone: (516) 296-7000
Facsimile: (516) 296-7111

Hearing Date: January 21, 2025
Time: 2:30 p.m.
Objection Date: January 14, 2025
Time: 5:00 p.m.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In re:

HUI QIN a/k/a MUK LAM LI a/k/a KARL QIN,

       Debtor.
------------------------------------------------------------X

Chapter 7

Case No.: 24-41955-ess

## MOTION FOR AN ORDER PURSUANT TO 11 U.S.C. § 105(a) AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019 APPROVING SETTLEMENT, COMMON INTEREST AND COOPERATION AGREEMENT AND GRANTING SUCH OTHER AND FURTHER RELIEF AS IS JUST

   Richard J. McCord, Esq. (the "**Trustee**"), as Chapter 7 Trustee of the Estate (the "**Estate**") of Hui Qin a/k/a Muk Lam Li a/k/a Karl Qin (the "**Qin Debtor**"), in the above-captioned case, by and through his counsel, Certilman Balin Adler & Hyman, LLP, hereby seeks an order pursuant to 11 U.S.C. § 105(a) and Rules 2002(a)(3) and 9019(a) of the Federal Rules of Bankruptcy Procedure ("**Bankruptcy Rules**") approving a Settlement, Common Interest and Cooperation Agreement (the "**Agreement**"), a copy of which is annexed hereto as **Exhibit A**, by and between the Trustee, on one hand, and Terry Kan and Anita Hou (collectively, the "**Liquidators**"), Court Appointed Joint Liquidators of the Debtor, SMI Holdings Group Ltd. (collectively the "**HK Debtor**") and providing such other and further relief as is just and proper (the "**Motion**"); and respectfully represents and sets forth as follows:

### SUMMARY OF RELIEF REQUESTED

   1.  Upon information and belief, the Debtor owned and/or controlled the HK Debtor

8433077.3

for several years during which the Liquidators assert that the Qin Debtor misappropriated at least US $37,000,000 from the HK Debtor. They further allege that the Qin Debtor directly or indirectly used such monies to fund financial accounts and/or acquire real property and/or other personal property directly or indirectly owned by the Qin Debtor. The Liquidators are based in Hong Kong and have advised the Trustee that they have a substantial amount of documents and information, a good part of which is in Chinese, concerning the Qin Debtor's involvement with the HK Debtor. Although the Trustee understands that the assets which the Qin Debtor has admitted or asserted to having an ownership interest appear to be located in the United States, he also understands that there may be other undisclosed assets located outside the United States.

2.      As set forth in more detail below, the Trustee has been able to secure, subject to this Court's approval, a resolution of claims and issues with the Liquidators that, on balance, the Trustee believes in his business judgment will provide material benefit to the creditors of the Qin Debtor's estate. Several considerations form the basis of that decision. First, the Qin Debtor has produced effectively zero information to the Trustee to substantiate his claims to certain assets, with the Trustee having to rely on information obtained by certain creditors of the Qin Debtor pre-petition. It is also an important part of his consideration that a large number of the creditors asserting claims against the Qin Debtor's estate also have asserted or would be entitled to assert, claims against the HK Debtor. Moreover, with the apparent origin of the monies used to acquire real and personal property by the Qin Debtor and/or family members or associates for his benefit, which funds originated overseas in Chinese territories, this proposed cooperation and sharing agreement provides the Trustee and the Qin Debtor's estate with an overseas presence to assist the Trustee in obtaining information which may be used to recover assets that belong to the Qin

Debtor's Estate and will therefore benefit its creditors.

    3.    The salient provisions of the Agreement are as follows:

    a. In full and final resolution of the Liquidators' claims against the Debtor's Estate, the Parties agree that the Liquidators shall be entitled to receive 50% of the net proceeds recovered from the liquidation of the Qin Debtor's non-exempt assets, wherever located. Agr. ¶ 2.

    b. In the event the amounts paid over to the Liquidators as Liquidator Distributions exceed the total amount of adjudicated claims against the HK Debtor and any and all professional fees, including the fees owed to the Liquidators, such excess amounts will be paid over to the Estate for distribution to the creditors of the Qin Debtor's Estate. Agr. ¶ 4.

    c. Because some assets of the Qin Debtor may be located in foreign jurisdictions in which the Liquidators are better positioned to bring about recovery of same and it is believed that much of the information that can establish the Qin Debtor's legal or equitable ownership of assets may be located overseas and in a foreign language, the Trustee and the Liquidators agree to share information and cooperate so that as much of the Qin Debtor's assets can be located, recovered and liquidated. Agr. ¶ 5.

    d. To be effective, the Agreement need to be approved by this Court as well as by the HK Court. Agr. ¶ 7.

    4.    Accordingly, the Trustee has entered into the Agreement with the Liquidators that eliminates any litigation or argument over direct or derivative claims against third parties and/or in and to any real or personal property in which the Qin Debtor has a legal or equitable interest. Upon the approval of the Agreement by this Court and the court overseeing the HK Debtors' liquidation, it is expected that the Trustee and the Liquidators will, at that point, join forces in a unified effort to track down, recover and liquidate assets for the benefit of the creditors of the Qin Debtor and the HK Debtor, many of which have claims against both estates.[1] It is recommended

---

[1] *See* Schedule 2 to the Agreement.

that creditors and parties in interest review the Agreement for additional details.

5.  As such, to avoid litigation expenses being incurred in legal proceedings in multiple courts and the time delays that would accompany such proceedings, by this Motion, the Trustee seeks entry of an Order, pursuant to 11 U.S.C. § 105(a) and Bankruptcy Rules 2002(a)(3) and 9019(a), approving the proposed Agreement and authorizing the Trustee to enter into it. The Liquidators will also seek approval of the Agreement in their requisite court.

## JURISDICTION

6.  This Court has jurisdiction over this Motion under 28 U.S.C. § 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this proceeding is proper pursuant to 28 U.S.C. § 1408 and 1409.

7.  The relief sought in this Motion is based upon Section 105(a) of the Bankruptcy Code, Bankruptcy Rules 2002(a)(3) and 9019(a) and L.B.R. 9077-1(c).

## BACKGROUND

8.  On May 8, 2024 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief (the "**Bankruptcy Case**") under Chapter 7 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Eastern District of New York (the "**Bankruptcy Court**").

9.  By Notice of Appointment of Trustee, dated May 8, 2024 [ECF Doc. No. 3], the Trustee was duly appointed the Chapter 7 Trustee of the Debtor's Estate, has qualified and is and has been the permanent trustee in this Bankruptcy Case.

10. Prior to the Petition Date, a group of creditors asserting claims against the Qin Debtor commenced an action against, among other persons, the Qin Debtor, his putative ex-spouse,

and a substantial amount of business entities alleged to hold assets either as a result of fraudulent conveyances or as outright sham transactions. *See Huzhou Chuangtai Rongyuan Investment Management Partnership, et al. v. Qin, et al.*, 24 Civ. 2210 (S.D.N.Y.) (the "**SDNY Action**"). The Liquidators assert that many of those assets alleged to actually belong to the Qin Debtor were obtained or funded by monies improperly or illegally taken from the HK Debtor over a period of years such that the Liquidators assert that they may be able to claim title to (or substantial interests in) such assets over the claims of others, including, but not limited to, the Qin Debtor.

11. For instance, the Debtor commenced a pre-petition action styled *Hui Qin v. Duo Liu, St. Grand Ceremony, LLC and PH2003 Unit LLC* in the Supreme Court of the State of New York, County of New York, Index No. 152062/2024 (the "**Pre-Petition Action**") which, among other things, asserted that the Debtor holds an alleged property interest in the following two condominium units in the building known as The Plaza Condominium (the "**Condominium**") with a street address of One Central Park South, New York, NY 10019: (i) Unit 2003 together with its appurtenant interest in the common elements of the Condominium ("**Unit 2003**"), and (ii) Unit 2009 together with its appurtenant interest in the common elements of the Condominium ("**Unit 2009**", and together with Unit 2003, collectively, the "**Apartments**"). The Qin Debtor's putative ex-wife asserts that Unit 2003 is owned by PH2003, Unit 2009 is owned by St. Grand and PH2003 and St. Grand are both owned and/or controlled by Duo "Emma" Liu.

12. On the other hand, the Trustee believes that the Debtor's Estate may have an interest in the Apartments and/or the proceeds of the sale thereof. The Liquidators assert that it was the HK Debtor's money that was originally used to acquire the Apartments. Thus, there are multiple persons asserting ownership claims against the Apartments. Such multiple, competing claims to

ownership affect other assets that may be recoverable, including financial accounts, and other real or personal property.

13. The Parties, through counsel, engaged in extensive discussions concerning (i) the universe of known potential assets, (ii) the fact that most of the information concerning those assets, or at least how and when acquired by or for the benefit of the Qin Debtor, may be in a foreign language, with some assets located overseas, and (iii) the various litigations that could be involved in recovering those assets and wish to avoid the uncertainty, expense, and delay incident to protracted litigation. That resolution includes not having to litigate over whether the assets were acquired with monies of the Qin Debtor or to which he was otherwise entitled, or were improperly acquired with money belonging to the HK Debtor. Some of that litigation may require the application of foreign laws. As discussed in more detail below, the Trustee respectfully submits that this resolution falls well above the lowest level in the range of reasonableness and provides substantial value to the Debtor's Estate and its creditors holding allowed claims. As a result, the Trustee requests that the Agreement be approved by the Court.

## RELIEF REQUESTED

14. Bankruptcy Rule 9019 governs the approval of compromises and settlements, and provides in relevant part at follows:

> On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indentured trustees as provided in Rule 2002 and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019(a). Compromise or settlement is generally favored, with the Rule 9019 approval process actually encouraging such outcomes, subject to analysis and approval by the Court. *See Nellis v. Shugrue*, 165 B.R. 115, 122 (S.D.N.Y. 1994) (citing *In re New York, N.H. &*

*H. R.R. v. Smith,* 632 F.2d 955, 959 (2d Cir.), *cert. denied sub nom. Barry v. American Financial Enterprises, Inc.,* 449 U.S. 1062, 101 S.Ct. 786, 66 L.Ed.2d 605 (1980)).

15.     In approving a compromise or settlement, the Court is required to make an "informed and independent judgment" as to whether the compromise is "fair and equitable" based on an

> educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise. Basic to this process in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of litigation.

*Protective Comm. for Index. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968) [hereinafter "**TMT**"]; *see also Airline Pilots Assen v. Am. Natal Bank & Trust Co. (In re Ionosphere Clubs, Inc.)*, 156 BR. 414 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994); *SEC v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.),* 960 F.2d 285, 292 (2d Cir., 1992), *cert. dismissed,* 506 U.S. 1088 (1993); *In re Arrow Air, Inc.*, 85 B.R. 886, 891 (Bankr. S.D. Fla. 1988).

16.     Any determination on the "propriety of the settlement" shall be made by the court after considering whether the proposed settlement is in the "best interest of the estate," (*Handler v. Roth (In re Handler)*, 386 B.R. 411, 420 (Bankr. E.D.N.Y. 2007) (quoting *In re Adelphia Comm'n Corp.*, 327 B.R. 143, 158 (Bankr. S.D.N.Y. 2005))), with approval within the sound discretion of the court. *Arrow Air*, 85 B.R. at 891; *see also Depo v. , Chase Lincoln First Bank, N.A. (In re Depo)*, 77 B.R. 381, 383 (N.D.N.Y. 1987). "[T]he bankruptcy court does not substitute its judgment for that of the Debtor" (*Depo*, 77 B.R. at 384) (citations omitted)), but it is to make "an independent determination" of the propriety of the proposed settlement terms without merely

accepting a trustee's statement that the settlement is reasonable, or rubber stamping such proposal. *Nellis*, 165 B.R. at 122 (citing *Ionosphere*, 156 B.R. at 426).

17. The court is not required in making its independent determination "to decide the numerous questions of law and fact . . . [R]ather [the court should] canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983). Thus, the court does not engage in a "mini-trial" of the dispute being settled. *In re Soup Kitchen Int'l Inc.*, 506 B.R. 29, 37 (Bankr. E.D.N.Y. 2014) ("A bankruptcy court need not conduct an independent investigation into the reasonableness of the settlement…. It is not necessary for the court to conduct a 'mini-trial' of the facts or the merits underlying the dispute." (quoting *In re Chemtura Corp.*, 439 B.R. 561, 594 (Bankr. S.D.N.Y. 2010))); *In re Purofied Down Prods. Corp.*, 150 BR. 519 (S.D.N.Y. 1993) (noting that mini-trial of settled claims to determine whether settlement should be approved was not necessary). All that the proponent of the settlement must do is establish that it is "prudent to eliminate the risks of litigation to achieve specific certainty though admittedly [the settlement] might be considerably less (or more) than were the case fought to the bitter end." *Fla. Trailer & Equip. Co. v. Deal*, 284 F.2d 567, 573 (5th Cir. 1960); *see also United States v. Alaska Nat'l Bank of N. (In re Walsh Constr., Inc.)*, 669 F.2d 1325, 1328 (9th Cir. 1982) (bankruptcy court need not conduct "exhaustive investigation into the validity of the asserted claim").

18. The court "may give weight to the opinions of the Trustee, the parties [to the settlement], and their counsel." *In re Bell & Beckwith*, 77 B.R. 606, 612 (Bankr. N.D. Ohio 1987); *see also Handler*, 386 B.R. at 421.

19. The Second Circuit has elaborated on the factors discussed in *TMT* and its progeny,

and outlined the following seven factors (the "***Iridium* Criteria**") to be considered by a court in deciding whether to approve a compromise or settlement:

   i. the balance between the litigation's possibility of success and the settlement's present and future benefits;
   ii. the likelihood of complex and protracted litigation, with its attendant expense, inconvenience, and delay [ ];
   iii. the paramount interest of the creditors, including the proportion of class members who do not object to or who affirmatively support the settlement;
   iv. whether other parties in interest support the settlement;
   v. the competency and experience of the counsel who support the proposed settlement;
   vi. the relative benefits to be received by individuals or groups within the class; and
   vii. the extent to which the settlement is the product of arms' length bargaining.

*Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452m 462 (2d Cir. 2007); *see also Soup Kitchen*, 506 B.R. at 37 ("In evaluating whether a settlement is above the lowest point in the range of reasonableness, bankruptcy courts in the Second Circuit look to the factors set forth in [*Iridium*].").

20. Here, the Trustee has determined that reaching a compromise with the Liquidators, upon the terms and conditions of the Agreement, is in the best interest of the Debtor's Estate and its creditors, falls well above the lowest level on a range of reasonableness, and is the most economical and efficient way to move the Estate forward on a path to being able to try and recover money for its creditors. Moving in as prudent and expeditious manner as possible without the need to incur additional fees or run the risks and delay inherent with litigation is fully supported here.

Balancing of Possibility of Success with Benefits of Compromise:

21. All litigation comes with risks, which are always present even when a party believes strongly in its position. Settlement or compromise removes that risk. It is currently difficult to

9

8433077.3

ascertain the possibility of success because each potential asset may have its own facts and circumstances underlying how and with what funds it was acquired, and many of those facts and circumstances remain unknown. It is certainly reasonably to believe that such facts and circumstances may give rise to an all or nothing determination as to whom should be found entitled to ownership of a particular asset. The Trustee respectfully submits that the unknown should not weigh against approval of the Agreement and, on balance, the clearing of litigation so that assets can be recovered and then shared, provides a far better benefit of the compromise than litigating first and hoping that the outcome is in the Trustee's favor. Those litigations would take time and the Qin Debtor's Estate would incur a substantial cost. Moreover, the terms of the Agreement provide incentive to the Parties to spend all of their time and attention on locating assets to recover and liquidate for the benefit of creditors regardless of the effort expended or the location of the assets.

22. Therefore, this factor weighs in favor of approving the Agreement.

Likelihood of Complex and Protracted Litigation.

23. Because of the apparent Byzantine efforts of the Qin Debtor to hide his assets from his creditors over the years, the Trustee and the Liquidators agree that the litigations to locate those assets, recover them, and then determine who has a stronger claim to them come with a fairly high level of complexity that may include proceedings in foreign courts. Such litigations could become even more complex if they involve the laws of foreign jurisdictions and/or issues of solvency. Furthermore, there may be times that such litigation over who is entitled to a particular asset would involve an all or nothing outcome. This Agreement removes the need to for any such litigations, as between the Trustee and the Liquidators, over assets and focuses all of their collective attention

on locating assets that can be recovered and liquidated for the mutual benefit of both proceedings.

24. As a result, to the extent applicable, approval of the Agreement based on this factor is clearly supported.

<u>Best interests of creditors</u>

25. Success in this case will only be achieved by the Trustee actually recovering assets or the proceeds thereof. Thus, the best interests of creditors require the Trustee being put in the best position possible to effectuate such recoveries. There exists a language barrier in this case, at least in so far as it is believed that a substantial amount of the information necessary to trace and prove that assets actually belong to the Qin Debtor are in Chinese. Moreover, much of that information appears to be located outside the United States. All or most all of the information concerning the Qin Debtor's time running the HK Debtor is located, upon information and belief, in Hong Kong or other of China's territories. Those factors are reasonably projected to, absent outside assistance, substantially increase the costs and timing of administration of this case compared to a case centered in the United States.

26. The pool of potentially recoverable assets is believed to be extensive, but with the detail and location of most of those assets currently unknown. It is also believed that most of those assets are hidden by the Qin Debtor within a maze of companies and individuals nominally holding his assets, orchestrated by him to evade his creditors. While the Agreement does not immediately result in any recovery for the Debtor's Estate, its terms are still in the best interests of the Estate's creditors because this resolution avoids the Estate incurring litigation costs and expenses over ownership and/or entitlement to assets and proceeds of assets. It also takes into account that some assets may not be easily recovered, particularly those located overseas, through the Trustee and

the Liquidators working together both on an information level as well as an asset recovery level. There is also a substantial cross-over of creditors between the two insolvency cases. Thus, the Agreement provides substantial benefits to the Debtor's Estate and creditors.

27. Accordingly, this factor weighs in favor of approving the Agreement.

<u>Parties represented by competent and experienced counsel</u>:

28. The Parties' respective counsels have many years of combined experience in litigation and settlements thereof. Additionally, counsel to the Trustee with over 35 years of experience in bankruptcy litigation, recommends that the Court approve the Agreement, to avoid the uncertainty and expenses of any current litigation, discovery and motion practice or risk the incurrence of additional administrative costs.

<u>Releases</u>

29. The Agreement does not contain releases for the Parties or any third parties. However, the Agreement does resolve the HK Debtor's claims against the bankruptcy estate of the Qin Debtor.

<u>Arm's Length Negotiations; No Fraud or Collusion</u>

30. All of the Parties negotiated the terms and conditions of the Agreement with no intent or evidence of fraud or collusion.

31. This factor supports approval of the Agreement.

32. Based on the foregoing, it is the Trustee's and his counsel's opinion that the terms and conditions of the Agreement are fair and equitable and provide a tremendous amount of savings directly beneficial to all of the Debtor's creditors, and thereby falls well above the lowest level in a range of reasonableness under the *Iridium* Criteria.

## NO PREVIOUS REQUEST

33. No previous request for the relief requested herein has been made by the Trustee to this or any other Court, except that the Trustee has a pending motion seeking approval under Rule 9019 of an unrelated compromise [ECF Doc. No. 71]. The hearing on that motion has not yet occurred and is currently scheduled for December 30, 2024.

## STATUTORY BASIS FOR RELIEF REQUESTED

34. Because this Motion presents no novel issues of law and the authorities for relief sought by the Trustee are set forth herein, the Trustee respectfully submits that it has complied with the requirements of Local Bankruptcy Rule 9013-1(a) and no separate memorandum of law is necessary, but the Trustee reserves the right to file a brief in reply to any objection to this Application.

**WHEREFORE**, the Trustee respectfully requests that this Court enter an order pursuant to 11 U.S.C. § 105(a) and Bankruptcy Rules 2002(a)(3) and 9019(a) finding that the terms and conditions of the Agreement fall above the lowest level in the range of reasonableness and, accordingly, approving the Agreement and providing such other and further relief as is just and proper.

Dated:  East Meadow, New York
        December 23, 2024

                         **CERTILMAN BALIN ADLER & HYMAN, LLP**
                         Counsel to Chapter 7 Trustee

                         By  /s/ Richard J. McCord
                             Richard J. McCord, Esq.
                             Robert D. Nosek, Esq.
                             90 Merrick Avenue
                             East Meadow, NY  11554
                             (516) 296-7000