CERTILMAN BALIN ADLER & HYMAN, LLP
Counsel to the Chapter 7 Trustee
Richard J. McCord, Esq.
Robert D. Nosek, Esq.
90 Merrick Avenue
East Meadow, NY 11554
Phone: (516) 296-7000
Fax: (516) 296-7111

**Hearing Date: March 4, 2025**
**At: 12:30 p.m.**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re:

HUI QIN a/k/a MUK LAM LI a/k/a KARL QIN,

Debtor.
-------------------------------------------------------------x

Chapter 7
Case No. 24-41955-ess

**Related to ECF Doc. No. 130**

## TRUSTEE'S OBJECTION TO DEBTOR'S MOTION
## TO WITHDRAW CHAPTER 7 PETITION

**RICHARD J. MCCORD, ESQ**., the Chapter 7 Trustee ("**Trustee**") of the Estate of Hui Qin a/k/a Muk Lam Li a/k/a Karl Qin (the "**Debtor**"), by and through his attorneys, Certilman Balin Adler & Hyman, LLP, submits the following objection to the Debtor's *Motion to Withdraw Chapter 7 Petition*, filed February 6, 2025 [ECF Doc. No. 130] (the "**Motion**"), and respectfully represents as follows:

### PRELIMINARY STATEMENT

1. The Court should deny the Debtor's Motion because, among other reasons, the interests of the Debtor's creditors would be better served with this case continuing under the oversight of this Court and the administration of the Debtor's estate by the Trustee. The Trustee respectfully submits that the Debtor's interests are also better protected through the continuation of this case, at least as to any exempt assets the Debtor may have. Also weighing against the Debtor's request for a dismissal is the Debtor's general lack of cooperation throughout this case in providing necessary and requested information about his assets, and his failing to appear for

multiple adjourned § 341(a) meetings. He has also waited almost nine months after commencing this case to try and dismiss it. As discussed below in more detail, the Debtor has simply not put forth sufficient reasons as to why he should be able to withdraw and dismiss this case at this time.

## BACKGROUND

2.   The Debtor filed a voluntary petition under chapter 7 of Title 11 of the United States Code (the "**Bankruptcy Code**") on May 8, 2024 (the "**Petition Date**") and immediately gained the protection of the automatic stay from creditor actions against him and his assets. Although not filed until two months into the case, the Debtor filed schedules of assets and liabilities and a statement of financial affairs on July 8, 2024. *See* ECF Doc. No. 27. A copy of the Debtor's Schedule A/B and Statement of Financial Affairs is annexed hereto as **Exhibit A**.

3.   After a hearing held by the Court on November 12, 2024, on the Trustee's motion challenging the Debtor's claimed exemptions [ECF Doc. No. 67], the Court advised the Debtor that he "may file amended schedules to indicate approximate value of property identified as 'unknown value' by 11/26/2024." *See* ECF Docket Entry November 12, 2024. No amendments have been filed to date. The Court resolved the Trustee's motion with a preservation of the Debtor's claimed exemptions up to "the dollar amount value limits or other rights to exemption or limitations thereon, individually or in the aggregate as applicable, set forth in the applicable state or Federal statute(s)." *See* Order entered January 22, 2025 [ECF Doc. No. 121]. The Debtor claimed exemptions under the Federal exemptions found in Section 522(d) of the Bankruptcy Code.

4.   Schedule A/B (*see* Exhibit A) reflects the Debtor asserting legal and/or equitable interests in, among other assets, the following assets:

   a. Penthouse apartments located at and known as the Plaza Apartments;

    b. a Rolls-Royce;
    c. unidentified jewelry; and
    d. personal loans totaling $100,000,000.00 by the Debtor to SMI Holdings Group Limited, a Hongkong Public Company (the "SMI Claim").

  5.  In response to whether the Debtor had any cash, he responded on Schedule A/B "no," (*see* Exh. A, Sch. A/B Qust. 16), and concerning "[a]ny financial assets you did not already list," he also responded "no." *Id.* at Qust. 35. The Debtor's response on his Statement of Financial Affairs to question 10 was that "various judgment creditors" repossessed, foreclosed, garnished, attached, seized, or levied the "debtor's bank accounts in US and Hong Kong, and Singapore." *See* Exh. A, SoFA, Qust. 10. No other seizures of property were disclosed by the Debtor.

  6.  The claims register in the Debtor's case, a copy of which is annexed hereto as **Exhibit B**, reflect total claims of approximately $930,000,000 filed against the Debtor's estate, of which approximately $495,000,000 are collectively held by Huzhou Huihengying Equity Investment Partnership, Huzhou Huirongsheng Equity Investment Partnership, and Huzhou Chuangtai Rongyuan Investment Management (collectively, the "**Huzhou Creditors**"). There are eleven other creditors that filed proofs of claim against the Debtor's estate.

  7.  Prior to the Petition Date, the Debtor was, and continues to be, a defendant in several litigations pending in the United States District Court for the Southern District of New York (the "**District Court**"), including, but not limited to, *Huzhou Chuangtai Rongyuan Investment Management Partnership et al v. Hui Qin et al.*, S.D.N.Y. 24-cv-02219-KPF (the "**SDNY Recovery Action**"). Of the group of creditors which have filed claims in this case against the Debtor, it is only the Huzhou Creditors that are parties in the SDNY Recovery Action seeking to collect on their judgment against the Debtor.

8. The Debtor is also an appellant in an appeal before the U.S. Circuit Court of Appeals for the Second Circuit, 23-7294 ("**Appeal 23-7294**"). A copy of the docket for Appeal 23-7294 is annexed hereto as **Exhibit C** (the "**Appeal 23-7294 Docket**"). That appeal is currently stayed by order entered June 5, 2024, a copy of which is annexed hereto as **Exhibit D**, which also requires the Debtor to file status update letters. The Appeal 23-7294 Docket reflects that between June 20, 2024, and February 4, 2025, seven status letters have been filed, all by Seiden Law as counsel for the Debtor ("**Debtor's Appellate Counsel**"). A copy of the most recent status letter is annexed hereto as **Exhibit E**.

9. Because of, among other reasons, the Debtor's pervasive non-cooperation in this case, the Trustee filed a complaint (the "**Complaint**") objecting to the Debtor's discharge under Section 727(a) of the Bankruptcy Code. *See Complaint*, Bankr. E.D.N.Y. 24-01109-ess (the "**Discharge Action**"), a copy of which is annexed hereto as **Exhibit F**. After service of a summons with the Complaint by the Trustee (*see* Adv. P. No. 24-01109-ess ECF Doc. Entry 3), the Debtor defaulted in filing an answer or other responsive pleadings. At the initial pre-trial conference in the Discharge Action, the Court noted the Debtor's default on the record. *See* 24-01109 Dkt. Entry February 18, 2025 ("The default of the defendant is noted on the record").

10. Several of the claims for relief asserted in the Complaint are grounded on the Debtor's lack of cooperation and failure to provide the Trustee with documents and information about the Debtor's assets, even after the Debtor advised during Section 341 testimony that such documents and information would be provided. It has been six months since the Trustee requested that the Debtor produce documents and information the Debtor used to prepare his schedules, which includes information about the SMI Claim. A copy of that request is annexed hereto as **Exhibit G** (*see* No. 10).

11.     After filing the Complaint, the Trustee received detailed information about items belonging to the Debtor that were seized from him at or about the time of his arrest in October 2023 by the U.S. government, including three (3) watches (the "**Watches**") and cash, including $30,200 USD, €7,300 EUR, and ₣570 (Swiss francs) (collectively, the "**Cash**") prior to the Petition Date within one (1) year of that date. That seized property is not disclosed anywhere on the Debtor's Schedules or in his Statement of Financial Affairs and was never raised by the Debtor during any of the Section 341 meetings he attended. With new information recently obtained, the Trustee is investigating the whereabouts of the Watches and the Cash.

12.     Since his appointment, the Trustee retained Certilman Balin Adler & Hyman, LLP as his general bankruptcy counsel by order entered on June 20, 2024 [*see* ECF Doc. No. 18], with that retention effective as of his appointment date of May 8, 2024. Between May 8, 2024, and January 31, 2025, CBAH has rendered legal services to the Trustee for this case in connection with, among other tasks, his investigation into the Debtor and his assets and liabilities, challenging the Debtor's exemptions and the Complaint, which total approximately $163,000, all of which remains subject to application and award. The Trustee's investigation continues with the Trustee engaged with counsels to the many creditors in this case, and without the current cooperation of the Debtor.

**Debtor's Motion to Dismiss**

13.     The Motion is comprised of a Declaration of Hui Qin (the "**Qin Declaration**"), the Debtor, along with a Notice of Motion and a proposed order. *See Mot. Dec. of Hui Qin*. The Debtor seeks relief "pursuant to 11 U.S.C.S. § 305(a), to withdraw the chapter 7 bankruptcy petition voluntarily because the interests of creditors and the debtor would be better served by such dismissal or withdrawal." Mot. 2. No other relief is sought in the Motion.

14. The third paragraph of the Qin Declaration appears to offer the Debtor's rationale for why his case should be dismissed. He states that he is "currently out of the U.S. indefinitely" and that "[i]t would be very difficult for me to continue representing myself in this action." Mot. 3. He further asserts that "I could not find a suitable attorney to represent me in this proceeding." *Id.* He then claims that "I left all of my assets or assets which I potentially have claims in the U.S." and he has "nothing to hide." *Id.* He concludes by offering that he has "no objections to the disposal of the assets in the U.S." *Id.* He also appears to believe that continuation of this case may "waste the judicial system and your Honor's time." *Id.*

15. Paragraph 4 of the Motion contains the Debtor's statement, signed under oath, that

> I have evidence that SMI Holdings Group Limited, a Hongkong public company owed me $100,000,000.00 because I personally lent money to SMI Hongkong and its subsidiaries in China in an amount of approximately ¥450,000,000.00.

Mot. 4.

16. The concluding paragraph states that "[t]he withdrawal of the Chapter 7 petition would not prejudiced [sic] the creditor, nor does the Chapter 7 filing intent to delay or defraud the creditors, and it is in the best interest of all of the parties involved here." Mot. 5. Beyond the foregoing, the Debtor offers no reasons or rationale as to how dismissal of this case at this stage would better serve the interests of the Debtor's creditors and the Debtor.

17. The statements in the Motion lack sufficient grounds on which to dismiss this case.

### I.     The Debtor Does Not Present Grounds Sufficient to Dismiss the Case Under Section 305(a)

18. Section 305(a) permits a court to "dismiss a case under this title or [ ] suspend all proceedings in a case under this title[.]" 11 U.S.C. § 305(a). Courts have long viewed Section 305(a) as a mechanism to be narrowly used for dismissal of a case. *See Grasmann v. Grasmann*

*(In re Grasmann)*, 156 B.R. 903, 910 (Bankr. E.D.N.Y. 1992) ("While the language of Section 305 is clear, its application is narrow."). It also "should be used sparingly" and "should [not] be used as a substitute for § 707(a)." *In re 82 Milbar Blvd. Inc.*, 91 B.R. 213, 216 (Bankr. E.D.N.Y. 1988). One reason for the sparing use is because "[u]nlike dismissal pursuant to § 707(a), a § 305 dismissal is not reviewable by appeal or otherwise." *Id.* (internal quotation marks omitted) (citing 11 U.S.C. § 305(c)).

19. Implementation of Section 305(a) requires a showing by the movant that both the creditors and debtor would be better served by a dismissal. *Cf. In re Korean Radio Broadcasting, Inc.*, Case No.: 19-46322-ess, 2020 WL 2047990, at *7 (Bankr. E.D.N.Y. Mar. 31, 2020) (stating that abstention relief under "Section 305 is an extraordinary remedy and is appropriate only in the situation where the court finds that both creditors and the debtor would be better served by a dismissal."). Such showing is not made here by the Debtor for himself and for his creditors.

20. When reviewing requests for dismissal of a case under Section 305(a), courts in this Circuit generally consider seven factors:

> (1) the economy and efficiency of administration; (2) whether another forum is available to protect the interests of both parties or there is already a pending proceeding in state court; (3) whether federal proceedings are necessary to reach a just and equitable solution; (4) whether there is an alternative means of achieving an equitable distribution of assets; (5) whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case; (6) whether a non-federal insolvency has proceeded so far in those proceedings that it would be costly and time consuming to start afresh with the federal bankruptcy process; and (7) the purpose for which bankruptcy jurisdiction has been sought.

*In re Genger*, No. 19-13895 (JLG), 2023 WL 4311219, at *18 (Bankr. S.D.N.Y. June 30, 2023) (quoting *In re Monitor Single Lift I, Ltd.*, 381 B.R. 455, 462 (Bankr. S.D.N.Y. 2008)) (denying

dismissal of case under 11 U.S.C. § 305(a)); *In re Korean Radio*, 2020 WL 2047990, at *7 (quoting *In re Paper I Partners, L.P.*, 283 B.R. 661, 679 (Bankr. S.D.N.Y. 2002); *In re Zapas*, 530 B.R. 560, 572 (Bankr. E.D.N.Y. 2015) (citing *Monitor Single Lift I* and denying dismissal of involuntary petition because "there is nothing in the record that requires this Court to dismiss and abstain pursuant to § 305(a)").

21. As related to the first factor, the Trustee has been appointed and qualified as the permanent trustee, has retained counsel approved by this Court and has gone down the path of investigating the Debtor's business and financial affairs, including trying to locate assets which can be recovered and liquidated for the benefit of all of the Debtor's creditors. The efficiency of the chapter 7 process is to appoint one person, i.e., a trustee, to locate and administer non-exempt assets of a debtor's estate and then distribute those proceeds through a statutory priority scheme found in Section 726 of the Bankruptcy Code, all under the oversight and ultimate approval of this Court. The Trustee is actively engaged with the creditor body, with the chapter 7 bankruptcy process offering a more economic and efficient process that whatever process would need to be commenced outside of bankruptcy that better serves all of the Debtor's creditors, not just a few or one. There is nothing in the Debtor's Motion addressing the economy and efficiency of the bankruptcy process over any other process. Therefore, factor one has not been satisfied by the Debtor to support a dismissal.

22. Much of the known information in this case applies to several of the foregoing factors. For instance, as reflected on the Claims Register, the Debtor is subject to multiple, substantial claims which have already been litigated elsewhere by the Debtor's creditors. That is wholly unlike the *Korean Radio* case which was essentially found to be a two-party dispute. *See In re Korean Radio*, 2020 WL 2047990, at *8. Even though it appears that the Huzhou Creditors

may have been further along through the SDNY Recovery Action prior to the Petition Date than other creditors in seeking to collect on their competing claims, it is clear that the Debtor has multiple creditors all chasing the same pool of assets, with some creditors ahead of the others in that chase.  The Trustee respectfully submits that with the multitude of creditors, there is not an alternative way to achieve an equitable distribution of assets, when recovered, other than through this bankruptcy case.

23. The Debtor states that he has "no objection to the disposal of the assets in the U.S." Mot. 3.  However, he offers nothing in the Motion about how dismissal of the case would effectuate that disposal or how the interests of his creditors would be better served outside this Court than in it.  Thus, with regard to the disposal of assets, the Debtor has not established how dismissal of the case would be in either his creditors or his best interests.  On the other hand, the Federal bankruptcy process provides a just and equitable solution for the disposal of any and all of the Debtor's non-exempt assets wherever they may be located.

24. Because of the multitude of creditors, this forum is best positioned to protect the interests of the creditors as well as the interests of the Debtor.  It is only this forum that provides the Debtor with the protection of the automatic stay as well as the Federal amounts of exemptions which are not available to the Debtor outside of bankruptcy.  The Motion overlooks the benefit this case gives to him concerning his interest in exempt assets with him being able to take advantage of higher exemptions under the Federal exemptions than those offered under New York State judgment enforcement laws.  There is also not an assignment for benefit of creditors or some other similar procedure pending in another court in which all of the creditors are a party.  Accordingly, the Debtor has not established support for factors two, three and four all weigh against dismissal.

25. In evaluating factor five, there is simply no evidence, and actually contrary evidence, that there is any possibility of the Debtor and the creditors being able to work out a less expensive, out-of-court arrangement. This Debtor has not exhibited a willingness to cooperate with his creditors or the Trustee. There is nothing in the Motion and nothing in the record of this case that supports finding that the creditors and debtor would be better served in finding a less expenses equitable solution to the multiple claims against the Debtor, let alone even being able to accomplish such a task. As such, the fifth factor is not supported on this record.

26. While there may have been many different litigations specific to each creditor, there is no evidence that a non-federal insolvency proceeding, such as an assignment for benefit of creditors, existed prior this case. That is unlike the situation in which the Court in *Korean Radio* determined whether an involuntary chapter 7 case should be dismissed. *See Korean Radio*, 2020 WL 2047990, at *1 (finding that an assignment for the benefit of creditors was commenced pre-petition and was presently pending). As a result, the existence of factor six cannot be established here with no alternative to this proceeding.

27. With regard to the seventh factor as to why the Debtor sought relief from this Court, there is nothing in the Motion which speaks to that. But the Debtor has obtained the benefit of the automatic stay under Section 362(a) of the Bankruptcy Code, thereby keeping all of his creditors at bay, particularly the Huzhou Creditors in the SDNY Recovery Action. As a result, the seventh factor also weighs against dismissal.

28. The Trustee respectfully submits that all of the factors weigh against dismissal in this case.

29. There are additional reasons why dismissal should not occur. While the Debtor declares under oath that he has evidence of substantial loans made to SMI Holdings, such evidence

has never been produced to the Trustee. Furthermore, the Debtor fails to articulate how dismissal of this case would benefit the creditors concerning that particular potential asset.

30. Likewise, the Motion asserts that proceeding pro se "would be very difficult" and he could not "find a suitable attorney," but the Debtor offers nothing about how the creditors would be better served outside of this case when there is no evidence that he would or could obtain counsel. Furthermore, it appears that the Debtor is actually capable of retaining counsel as he has Appellate Counsel currently. The Debtor's own actions in this bankruptcy case over the last nine months undermine his assertion about allegedly being unable to represent himself in this case while being located outside of the United States. Thus far the Debtor has been able to participate in his Section 341(a) meeting of creditors and at least one hearing before the Court through video appearances and he has been able to file documents and seek relief as evidenced by the Motion. What the Debtor has not shown, whether in this case or outside of it, and puts forth nothing in the Motion, is his ability to work with his creditors or cooperate with the Trustee on some of the most basis tasks required by chapter 7 debtors.

31. Based on the foregoing, the Debtor has not provided sufficient evidence that dismissal of this case would better serve his creditors or himself. For that reason, the Motion should be denied.

**II.     The Motion Does Not Support a Dismissal Under Section 707**

32. Although the Debtor does not seek dismissal under Section 707 of the Bankruptcy Code in the Motion, the Trustee respectfully submits that the Motion is insufficient to sustain a finding that dismissal would be in the best interests of the Debtor's creditors and the Debtor.

33. A debtor does not have the absolute right to dismiss a chapter 7 case. *See e.g., Schwartz v. Geltzer (In re Smith),* 507 F.2d 64, 72 (2d Cir. 2007) (stating that "the debtor has no

absolute right to dismissal of a chapter 7 case.") (quoting *Turpen V. Eide (In re Turpen)*, 244 B.R. 431, 434 (8th Cir. BAP 2000))*; Delaney v. Messer, 22-CV-1664 (AMD), 22-CV-2432 (AMD), 22-CV-4805 (AMD), 22-CV-4806 (AMD),* 2023 WL 2614099, at *11 (E.D.N.Y. Mar. 20, 2023) ("In this Circuit, the debtor has no absolute right to dismissal of a Chapter 7 case.") (internal quotation marks omitted)(quoting *In re Smith*).

34. Rather, the debtor must show "cause" that such dismissal is warranted. 11 U.S.C. § 707(a); *In re Segal*, 527 B.R. 85, 90 (Bankr. E.D.N.Y. 2015) ("The right to voluntarily dismiss a chapter 7 case is not absolute; the debtor must establish cause for dismissal under § 707(a)."). Determinations of "cause" "is guided by equitable considerations and committed to the sound discretion of the bankruptcy court." *In re Hull*, 339 B.R. 304, 308 (Bankr. E.D.N.Y. 2006).

35. "The debtor bears the burden of proving that dismissal will not prejudice his creditors." *In re Bruckman*, 413 B.R. 46, 50 (Bankr. E.D.N.Y. 2009) (denying debtor's motion to dismiss chapter 7 petition). "A chapter 7 bankruptcy case should not be dismissed merely for the convenience of or at the request of a debtor." *In re Livecchi*, No. 09-20897, 2014 WL 6655702, at *2 (Bankr. W.D.N.Y. Nov. 20, 2014). Cases should also not be dismissed if the purpose of the petition was to forestall creditors, and the debtor moves to dismiss after attaining such delay. *In re Segal*, 527 at 94 (finding that delay of 142 days after filing bankruptcy to stay foreclosure was an intentional frustration of the "creditors and prejudiced the estate.").

36. Courts in this Circuit apply a "best interest of all parties in interest" test to determine whether dismissal is appropriate. *In re Smith*, 507 F.3d at 72. Accordingly, courts are to balance a debtor's desired fresh start coupled with a reduction in administrative expenses against the prejudice to creditors that may result if the case was dismissed. *Id.*

### A. Dismissal is Not in the Best Interest of the Debtor

37. The most important factor in analyzing whether a dismissal would be in the debtor's best interest is "whether the debtor is able to secure an effective fresh start." *See In re Segal*, 527 B.R. at 93 (internal quotation marks omitted) (quoting *Smith*, 507 F.3d at 75). When a debtor "has no ability to pay his creditors upon dismissal," (*id.* (quoting *Bruckman*, 413 B.R. at 53), a "voluntary dismissal may be inappropriate." *Id.*

38. Here, dismissal would merely restore the Debtor to a chaotic assortment of creditor efforts each independently racing to get to the Debtor's assets, including, but not limited to, through the SDNY Recovery Action by the Huzhou Creditors. Furthermore, there is nothing in the Motion that indicates how the Debtor would pay back his creditors other than his generalized offer of him having "no objection to the disposal of the assets in the U.S." Mot. 3. As described above (*supra* ¶ 24), dismissal would forfeit the Debtor's ability to assert his allowed Federal exemptions on certain of his assets. In this case, the Court recently affirmed, but limited, the Debtor's exemptions to certain property of the estate which the Debtor claimed under the Federal exemptions found in Section 522(d) of the Bankruptcy Code. *See Order*, entered January 22, 2025 [ECF Doc. No. 121]. Those Federal exemption levels would not be available to the Debtor if his case was dismissed. Accordingly, the foregoing is insufficient to establish that dismissal would be in the best interest of the Debtor.

### B. Dismissal Would Prejudice the Creditors and the Estate

39. Prejudice to creditors can result from the passage of a considerable amount of time during which they were forestalled from collecting. *Id.* (quoting *Dinova v. Harris (In re Dinova)*, 212 B.R. 437, 442 (B.A.P. 2d Cir. 1997). Prejudice to creditors can result when it is clear that a debtor is seeking to return to a pre-bankruptcy status quo in response to a motivated bankruptcy

trustee that collected money and was prepared to disburse it to the Debtor's creditors. *See, e.g., In re Jabarin*, 395 B.R. 330, 343 (Bankr. E.D. Penn. 2008).

40. Here, neither the Motion nor the Debtor's behavior to date in this case evidence that the creditors and the estate would not be prejudiced by a dismissal. It is the Debtor's burden to prove lack of prejudice, and he has not done so here. The Debtor filed the Motion seeking dismissal two hundred seventy-two days after the Petition Date. That delay is a substantial prejudice to the Debtor's creditors and the Debtor's estate.

41. The creditors have been further prejudiced by the Debtor's failure to cooperate with the Trustee and provide essential documents and information about his assets. For instance, while the Debtor declares under oath that he has evidence of substantial loans made to SMI Holdings (*see* Mot. 3), such evidence has never been produced to the Trustee. Furthermore, the Debtor fails to articulate how dismissal of this case would benefit the creditors concerning that particular potential asset.

42. The Motion is unclear as to the Debtor's motivation and actual intentions toward his creditors. Unlike the debtor in *Smith* (*see* 507 F.3d at 74-75), the Debtor here has not offered any proposal as to how his creditors should be paid. He asks the case to be dismissed, and states he has no objection to his U.S. assets being liquidated but does not offer what to do with the proceeds from such liquidation. Mot. 3. He affirms under oath that he is in possession of evidence of the SMI Claim but so far, nine months into his case he has refused to provide that evidence to the Trustee. And he has failed to provide information on a host of other assets he included in Schedule A/B, including never even mentioned or acknowledging the Watches and Cash.

43. With the Complaint, the Trustee is seeking to deny the Debtor his discharge. The Debtor did not respond to the Complaint and the Trustee anticipates moving that proceeding

forward by seeking a default judgment. But that motion has not yet been made. The Trustee notes that ineligibility for a discharge does not constitute "cause" for dismissing a chapter 7 case. *See Livecchi*, 2014 WL 6655702, at *2 (citing 6 Collier on Bankruptcy 707.03[2] (16th ed. rev.). On the other hand, "protecting exempt property, recovering assets for creditors, and administering assets" are valid "purposes that may be served by a bankruptcy." *Id.*

44.     The Motion also does not address the significant administrative costs that have accrued to date in this case. *Smith*, 507 F.3d at 75 (stating that on remand "[t]he Bankruptcy Court could hold an expedited hearing to determine what is owed to the trustee and could make dismissal contingent on Smith's willingness and ability to pay that amount."). A substantial amount of legal time and effort has been spent in this case investigating the Debtor's assets and potential assets, which investigations continue. That investigation has been made more difficult by the Debtor's unwillingness to cooperate with the Trustee in providing documents and information. The Court should deny the Motion. However, should the Court determine that dismissal is appropriate, before such dismissal becomes effective, the Court should permit the Trustee's counsel to file a fee application to seek award of fees and expenses incurred on an expedited basis and condition any dismissal on the Debtor paying the awarded fees in full.

45.     Based on the foregoing, the Trustee submits that the Debtor has not established a valid basis to support dismissal of his bankruptcy case, whether under Section 305(a), 707(a) or otherwise, and it would be beneficial to the Debtor's estate and its creditors holding allowed claims, and to the Debtor, for the case to remain under Chapter 7.

**WHEREFORE**, the Trustee respectfully requests that the Court deny the Motion in full and grant such other and further relief as is just.

Dated:  East Meadow, New York
        February 25, 2025

        **CERTILMAN BALIN ADLER & HYMAN, LLP**
        Counsel to the Chapter 7 Trustee

        By:      /s/ Robert D. Nosek
        **RICHARD J. MCCORD, ESQ.**
        **Robert D. Nosek, Esq.**
        90 Merrick Avenue
        East Meadow, New York 11554
        (516) 296-7000