Richard J. McCord, Esq.
Robert D. Nosek, Esq.
CERTILMAN BALIN ADLER & HYMAN, LLP
Counsel to the Chapter 7 Trustee, Richard J. McCord, Esq.
90 Merrick Avenue
East Meadow, NY 11554
Phone: (516) 296-7000
Fax: (516) 296-7111

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
In Re:

HUI QIN a/k/a MUK LAM LI a/k/a KARL QIN,

Debtor,

Chapter 7
Case No.: 24-41955-ess
--------------------------------------------------------------------X
RICHARD J. McCORD, ESQ., as Chapter 7 Trustee of the Estate of HUI QIN a/k/a MUK LAM LI a/k/a KARL QIN,

Plaintiff,

Adv. Pro. No.: 26-______-ess

-against-

HUI QIN a/k/a MUK LAM LI a/k/a KARL QIN, ZUOXIAO QIN, JIFA QU, MEISTER SEELIG & SCHUSTER PLLC f/k/a MEISTER SEELIG & FINE PLLC, BENJAMIN XUE, SHUO PENG, JOHN DOE #1-10, AND JANE DOE #1-10,

Defendants.
--------------------------------------------------------------------X

**COMPLAINT**

Richard J. McCord, Esq. (the “Trustee” or “Plaintiff”), the Chapter 7 Trustee of the Estate of Hui Qin a/k/a Muk Lam Li a/k/a Karl Qin, by his attorneys, Certilman Balin Adler & Hyman, LLP, as and for his complaint against Debtor Hui Qin a/k/a Muk Lam Li a/k/a Karl Qin (the “Debtor” or “Defendant”), Zuoxiao Qin (“Zuoxiao”), Jifa Qu (“Jifa”), Meister Seelig & Schuster PLLC f/k/a Meister Seelig & Fein PLLC (“MSF”), Benjamin Xue (“Xue”), Shuo Peng (“Peng”),

John Doe #1-10, and Jane Doe #1-10, respectfully alleges and sets forth to this Court as follows:

## JURISDICTION AND PARTIES

1. This action arises under 11 U.S.C. §§ 105(a), 549(a) and 550, New York common law, Federal common law and Rules 4004 and 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

2. This adversary proceeding arises in a case under Title 11 of the United States Code.

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 157 and 1334.

4. The statutory predicates for this proceeding are 11 U.S.C. §§ 105, 549 and 550 and Bankruptcy Rules 4004 and 7001, as this action arises in and under the pending Chapter 7 case of the Debtor.

5. This is a core proceeding pursuant to 28 U.S.C §§ 157(b)(2)(A), (E) and (O).

6. Venue in this Court is proper pursuant to 28 U.S.C. §1409(a).

7. The Plaintiff, as the chapter 7 trustee of the Debtor, has standing to prosecute this matter pursuant to 11 U.S.C. §§ 105(a) and 323(a).

8. This Complaint is timely filed.

9. Plaintiff consents to the entry of a final order or judgment by the Bankruptcy Court.

**Parties**

10. By notice of appointment, the Plaintiff was appointed interim Trustee and has since qualified as the permanent Trustee of the Debtor's estate.

11. Certilman Balin Adler & Hyman, LLP, is counsel to the Trustee, having been retained by Court Order dated June 20, 2024 [ECF Doc. No. 18].

12. At all relevant times herein except as otherwise stated herein, the Debtor is an individual with a last known mailing address c/o 37-12 Prince Street, Suite 9D, Flushing, New

York 11354, and email addresses of huiqin41955@gmail.com and khsg2025@gmail.com, both of which were provided by the Debtor or the Debtor's prior bankruptcy attorney.

13. Debtor's physical whereabouts are currently unknown because after being deported from the United States of America the Debtor has refused to update or correct his physical and/or mailing address notwithstanding repeated requests by the Trustee and as required under Federal Rule of Bankruptcy Procedure 4002(a)(5).

14. Defendant Zuoxiao Qin ("Zuoxiao") is an individual with a physical and mailing address of Ding #1, Tian Zhu Li Si Garden, Shunyi, Beijing, China 101312.

15. Zuoxiao is the father of the Debtor and father-in-law of Jifa.

16. Defendant Jifa Qu ("Jifa") is an individual with a physical and mailing address of 11 Stark Court, Flanders, New Jersey 07836.

17. Jifa is the brother-in-law of the Debtor and son-in-law of Zuoxiao.

18. Defendant Meister Seelig & Schuster PLLC f/k/a Meister Seelig & Fine PLLC ("MSF")[1] is a law firm organized under the laws of the State of New York with a principal place of business of 125 Park Avenue, 7th Floor, New York, New York (the "MSF Offices").

19. At all times relevant, MSF represented and provided legal services to the Debtor in connection with one or more legal matters, including *USA. v. Qin*, 24-cr-00100-JMA-ST, U.S. District Court for the Eastern District of New York (the "Criminal Case") and *Huzhou Chuangtai Rongyuan Investment Management Partnership, et al. v. Hui Qin, et al.*, 24-cv-02219-KPF, U.S. District Court for the Southern District of New York (the "Civil Collection Case").

20. Defendant Benjamin B. Xue ("Xue") is an individual with a principal place of

---

[1] The reference herein to defendant Meister Seelig & Schuster PLLC as "MSF" is because any and all of its acts or omissions occurred while it was named Meister Seelig & Fein PLLC.

business 1 School Street, Suite 303a, Glen Cove, New York 11542-2529.

21. Xue is a duly licensed attorney in the State of New York who, at all times relevant herein, provided legal services to the Debtor in connection with one or more legal matters including the Criminal Action and the Civil Collection Case.

22. Defendant Shuo Peng ("Peng") is an individual with a currently unknown residence or principal place of business.

23. Upon information and belief, Peng is an associate of the Debtor and is or was an officer, director, manager or person in charge of Beijing Xingmei Cinema Line Co., Ltd. an affiliate of one or more entities currently or previously owned by the Debtor.

**Debtor's Pre-Petition Incarceration**

24. At the time of the filing of the Debtor's chapter 7 petition, or immediately prior thereto, Debtor was incarcerated in MDC Brooklyn, 80 29th Street, Brooklyn, New York 11232.

25. MDC Brooklyn is an administrative security metropolitan detention center for the United States Federal Bureau of Prisons.

26. Upon information and belief, the Debtor was incarcerated in MDC Brooklyn beginning in or about October 2023 through May 8, 2024.

27. Prior to the Petition Date, the Debtor resided in 1 Central Park South, PH2003/PH2009, New York, NY 10019 (collectively, the "Plaza Apartments") and/or 39 Applegate Drive, Old Westbury, New York 11568 (the "Marital Home").

28. Upon information and belief, the Debtor was deported from the United States of America and left the country on or immediately after the Petition Date.

## BACKGROUND

29. On May 8, 2024 (the "Petition Date"), the Debtor filed a voluntary petition for relief

under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of New York.

30. In 2018, the Debtor was listed by Forbes Magazine as having a net worth of $1.8 billion dollars as of March 6, 2018.

31. By order entered August 26, 2024 [ECF Doc. No. 60] (the "Extension Order"), the Court extended the Debtor's time in which to file his schedules and statement of financial affairs to July 8, 2024.

32. The Extension Order states that "this Order is without prejudice to any arguments the Debtor or any party in interest may make concerning the Debtor's compliance with orders of the Court or the requirements of the Bankruptcy Code and Bankruptcy Rules."

33. The Debtor filed his Schedule A/B on July 8, 2024 under penalty of perjury [ECF Doc. No. 27-4] ("Schedule A/B").

34. Schedule A/B reflects the Debtor having no cash as of the Petition Date.

35. Schedule A/B reflects a claim by the Debtor to ownership of jewelry with no other information and an "unknown" value listed.

36. Schedule A/B reflects a claim by the Debtor to ownership of checking, savings and other financial accounts at Cathay Bank, Chase Bank, HSBC and Citi bank [sic] (collectively, the "Bank Accounts").

37. During a hearing before the Court on November 12, 2024, the Court permitted the Debtor to "file amended schedules to indicate approximate value of property identified as "unknown value" by 11/26/2024." *See* ECF Dkt. Entry 11/12/2024.

38. The Debtor filed his Statement of Financial Affairs for Individuals Filing for Bankruptcy under penalty of perjury [ECF Doc. No. 27-13] (the "SoFA") on July 8, 2024.

39. The Debtor's first § 341(a) Meeting of Creditors ("341 Meeting") was scheduled for June 12, 2024, at 12:00 p.m. (the "June 12 Meeting").

40. The Debtor appeared at the June 12 Meeting via Zoom with his counsel also separately appearing, and with several creditors also appearing.

41. The 341 Meeting was opened at the June 12 Meeting, with the Trustee qualifying as permanent trustee.

42. The 341 Meeting was adjourned to July 10, 2024, because of, among other reasons, the Debtor's lack of a social security card and that he had not yet filed his schedules and statement of financial affairs.

43. On July 10, 2024, the Trustee opened the continued 341 Meeting of the Debtor (the "July 10 Creditors Meeting"), at which the Debtor, Debtor's counsel, counsel to the Huzhou Creditors, the Office of the United States Trustee, and several other creditor counsels appeared, with a Mandarin interpreter also attending at the request of the Debtor.

44. The Debtor was questioned under oath during the July 10 Creditors Meeting.

45. The Debtor's testimony during the July 10 Creditors Meeting concerning his personal property was inconsistent with the information he included on his Schedule A/B.

46. The Debtor scheduled his jewelry with an "unknown" value but testified during the July 10 Creditors Meeting that he spent "a few million dollars" on jewelry.

47. Several times during the July 10 Creditors Meeting lengthy questioning of the Debtor by the Trustee, the Office of the United States Trustee and creditors' counsel, the Debtor was requested to produce a number of documents in furtherance of those questions and the responses or lack of responses thereto by the Debtor.

48. Outside of the 341 Meeting, the Trustee separately requested of the Debtor that he

produce documents and information concerning the Debtor's personal property.

49. During the course of the July 10 Creditors Meeting, the Debtor was asked to produce all documents the Debtor used in preparing his schedules.

50. The Debtor also offered on his own during the July 10 Creditors Meeting to provide documents concerning jewelry he had purchased.

51. The Trustee further asked for a "detailed list of jewelry, it's location, it's cost, where it was purchased," with the Debtor agreeing to provide that information.

52. The 341 Meeting was further adjourned to August 14, 2024, on the condition that the Debtor produce the requested documents by July 29, 2024, to which the Debtor agreed.

53. On August 19, 2024, the Trustee sent an e-mail to Debtor's counsel requesting the following documents:

- Copies of statements for any and all bank accounts held by the Hui Qin a/k/a Muk Lam Li a/k/a/ Karl Qin (the "Debtor"), his aliases and his businesses, for 2022, 2023 and 2024, including copies of cancelled checks, deposits slips, withdrawal slips;
- Full copies of the Debtor's 2021, 2022 and 2023 Federal and New York State Tax Returns;
- Inventory of the cigars and wines and documents from the purchase as reflected in Schedule A/B;
- Inventory of the handbags and accessories reflected in Schedule A/B and documents substantiate proof of purchase;
- Inventory and documents that substantiate the purchase of the jewelry reflected in Schedule A/B;
- Copies of account statements for 2022, 2023 and 2024 regarding SMI Holdings Group Limited and Nigbo SEA Company as reflected in Schedule A/B;
- Documents pertaining to the Debtors claims against ex-spouse Duo Liu a/k/a Emma Liu and her parents as reflected on Schedule A/B;
- Documents reflecting claims against Houzhou Chuangtai Rongyuan Investment Management in the amount of $2,000,000.00 as reflected on Schedule A/B;
- Documents and location of the Rolls Royce reflected on Schedule A/B;

- Copies of all documents that were utilized in preparing the bankruptcy schedules;
- List of all bank accounts in which the Debtor is a signatory;
- Documents pertaining to the Qin Family Trust, including a list of all assets and beneficiaries;
- Names of friends from Singapore, Hong Kong and New York that have financially helped the Debtor as he testified to at the 341 Meeting examination;
- Proof of purchase and sale of the Rolls Royce's;
- Provide a list of all business that the Debtor had/has an interest in the past six (6) years and include the following information: when the business was incorporated; when the business was no longer operating; if the business owned any real property, list of shareholders, provide purchasing documents, closing documents, last two years tax returns and bank statements;
- List of all Trust's debtor has an interest in and documentation pertaining to each Trust;
- Documents pertaining to the transfer of millions of dollars to Duo Liu a/k/a Emma Liu a/k/a Emma Qin ("Emma") prior to the within two years of the May 8, 2024(the "Filing Date");
- Documents pertaining to any and all real property, meaning house co-op or condominium, owned by the Debtor, Emma, or any business that the Debtor and Emma have an interest in, in the past six years, including deed, mortgage statement(s), appraisal, documents from the closing for the purchase and documents from the closing and sale;
- Documents pertaining to the transfer of any and all real property, meaning house co-op or condominium, to Emma or any business entity owned by Emma, or any business entity owned by the Debtor, in the past six years, including deed, mortgage statement(s), appraisal, documents from the closing for the purchase and documents from the closing and sale;
- Name, address and telephone number of the accountant utilized by the Debtor in connection with his personal finances and the filing of his personal tax returns;
- Name, address and telephone number of the accountant utilized by the Debtor in connection with any business owned by the Debtor and who handled all corporate related finances.

54. On August 23, 2024, the Debtor's counsel produced to the Trustee copies of judgments and complaints from the United States and Hong Kong "referenced in the bankruptcy petition" and copies of deeds for the Apartments and Marital Home (collectively, the "Debtor

Produced Documents”).

55. The Debtor Produced Documents is the extent of documents and information provided by the Debtor to the Trustee.

56. On August 26, 2024, the Trustee continued the 341 Meeting, which was attended by the Debtor, Debtor’s counsel, counsel to the Huzhou Creditors, the Office of the United States Trustee, and several other creditor counsels appeared, with a Mandarin interpreter also attending at the request of the Debtor (the “August 26 Meeting”).

57. The Debtor was questioned under oath during the August 26 Meeting.

58. During the August 26 Meeting, the Trustee addressed his prior request for documents, including that a lot of critical information which the Debtor did not produce such as the information about vehicles, jewelry and personal bank statements.

59. The Debtor’s 341 Meeting was then further adjourned from August 26, 2024, to September 26, 2024, because of the lack of document production by the Debtor.

60. On September 26, 2024, the Trustee continued the 341 Meeting, with the Debtor’s counsel appearing but the Debtor not appearing. The Debtor’s 341 Meeting was then further adjourned from September 26, 2024, to November 12, 2024.

61. On November 12, 2024, the Trustee continued the 341 Meeting, with the Debtor’s counsel appearing but the Debtor not appearing. The Debtor’s 341 Meeting was then further adjourned from November 12, 2024, to December 12, 2024.

62. On December 12, 2024, the Trustee continued the 341 Meeting, with the Debtor’s counsel appearing, but the Debtor did not appear even though he had registered through the appearance portal to attend.

63. On December 18, 2024, the Trustee filed a complaint (the “Discharge Complaint”)

against the Debtor seeking to deny the Debtor his bankruptcy discharge. *See McCord v. Qin*, Bankr. E.D.N.Y. 24-01109-ess, Dkt. No. 1.

64. The Discharge Complaint sought to deny the Debtor's bankruptcy discharge on, among other grounds, failure to cooperate with the Trustee and produce documents and information concerning, and actively concealing, his assets, including, but not limited to, jewelry and similar personal property.

65. On September 24, 2025, the Bankruptcy Court entered an order and judgment denying the Debtor's bankruptcy discharge pursuant to Bankruptcy Code Section 727(a).

**Transfers of Debtor's Undisclosed Personal Property**

66. The Trustee was advised that the FBI removed items during their investigation of the Debtor at or around the time of his arrest in October 2023.

67. In or about October 2023, a least seven (7) months prior to the Petition Date, the Federal Bureau of Investigation (the "FBI") seized from the Debtor's possession, custody or control personal property owned by the Debtor, including, but not limited to, three (3) luxury watches and currency.

68. In or about October 2023, the FBI seized from the Debtor a black and gold Patek Philippe watch (the "Black/Gold Patek Watch").

69. In or about October 2023, the FBI seized from the Debtor a black and silver Patek Philippe watch (the "Black/Silver Patek Watch").

70. In or about October 2023, the FBI seized from the Debtor a Audemars Piguet watch (the "Piguet Watch," and collectively with the Black/Gold Patek Watch and the Black/Silver Patek Watch, the "Watches").

71. Upon information and belief, the Watches have a combined value of no less than

$1,500,000.00.

72. In or about October 2023, the FBI seized from the Debtor United States currency totaling $30,200.00 of U.S. Dollars (the "Dollars").

73. In or about October 2023, the FBI seized from the Debtor European Union currency totaling €7,300 of euros (the "Euros").

74. In or about October 2023, the FBI seized from the Debtor Swiss currency totaling CHF 570 of Swiss francs (the "Swiss Francs," and collectively with the Black/Gold Patek Watch, the Black/Silver Patek Watch, the Piguet Watch, the Dollars, and the Euros, the "Seized Property").

75. From October 2023 through and including the Petition Date, the Seized Property was within the exclusive possession, custody and control of the FBI.

76. Between the Petition Date and June 4, 2024, the Seized Property remained within the exclusive possession, custody and control of the FBI.

77. On June 4, 2024, subsequent to the Petition Date, the FBI released the Seized Property to MSF.

78. The Seized Property was released by the FBI to a paraprofessional or other employee or agent of MSF who took those items to the MSF offices.

79. On June 4, 2024, Jifa was contacted by Peng through Weixin/WeChat at approximately 11:44 a.m. whereby Peng asked Qu to go to MSF's offices at 125 Park Avenue, 7th Floor, New York, NY promptly to get the Debtor's personal property.

80. On June 4, 2024, Qu did go to MSF's offices to collect the Seized Property.

81. On June 4, 2024, Qu signed a written Release of Hui Qin's Property (the "Release").

82. Upon information and belief, the Release was prepared by MSF.

83. The Release on MSF letterhead and dated June 4, 2024, states that "I, Jifa Qu, have authorization from Hui Qin and his attorney Benjamin Xue, Esq., to retrieve Hui Qin's personal property in the custody of his attorney, Henry Mazurek, Esq., of Meister Seelig & Fein PLLC, at 125 Park Ave, 7th Floor, New York, NY, 10017.

84. On June 4, 2024, Qu took all of the Seized Property, except for United States currency from the Dollars totaling $20,000.00 of U.S. Dollars, and left the MSF offices.

85. The Release further states that "I, Jifa Qu, received additional authorization from Hui Qin and his attorney Benjamin Xue, Esq., to release $20,000.00 to attorney, Henry Mazurek, Esq. for partial payment of Hui Qin's outstanding legal fees at Meister Seelig & Fein at 125 Park Ave, 7th Floor, New York, NY, 10017," also dated June 4, 2024.

86. Jifa Qu signed the Release in two separate places.

87. On or about June 4, 2024, MSF retained or took $20,000.00 from the Dollars and deposited that cash into its own bank account (the "$20K Transfer").

88. When questioned about the mention of his name in the Release, Xue, through another attorney in his office, asserted to the Trustee that he had no knowledge of the Release and gave no authorization for the Seized Assets to be picked up by Qu or used to pay any amounts owed to MSF by the Debtor.

89. On June 5, 2024, Qu purchased a round-trip ticket to Beijing, China (the "Beijing Airline Ticket").

90. On June 11, 2024, landed in Beijing, China with the Watches and United States currency from the Dollars totaling $8,000.00 of U.S. Dollars.

91. At some point while Qu was in Beijing, China in June 2024, Qu transferred the

Watches and $8,000.00 of U.S. Dollars from the Dollars to Zuoxiao.

92. In or about September 2024, Qu transferred to Peng the remainder of the currency from the Seized Property, comprised of the Euros, the Swiss Francs and $2,200.00 of the Dollars (collectively, the "Remaining Currency").

93. As of September 2024, the Remaining Currency had a total value in U.S. dollars of approximately $10,974.00.

94. Section 549(a) of the Bankruptcy Code provides in relevant part:

> "the trustee may avoid a transfer of property of the estate – (1) that occurs after the commencement of the case; and (2) (A) that is authorized under section 303(f) or 542(c) of this title; or (B) that is not authorized under this title or by the court."

11 U.S.C. § 549(a).

95. MSF had actual notice or actual knowledge of the Debtor's bankruptcy case from the Petition Date when during the Civil Collection Case MSF, through Henry E. Mazurek, Esq., a partner at MSF, appeared at, and addressed the District Court during a hearing held on May 8, 2024 after the commencement of the Debtor's bankruptcy case, with the U.S. District Court and several other counsels, including counsels of the Debtor, confirming and discussing the Debtor's bankruptcy filing.

96. The Debtor's bankruptcy case is not an involuntary case commenced under Section 303 of the Bankruptcy Code.

**AS AND FOR A FIRST CLAIM FOR RELIEF**
**UNDER 11 U.S.C. §§ 549, 550**
**<u>($20,000.00 Cash to MSF)</u>**

97. Plaintiff repeats and realleges each and every allegation set forth in paragraphs "1"

through "96" as if fully set forth herein.

98. Immediately prior to the $20K Transfer occurring, the $20,000.00 was and thereafter continues to be property of the Debtor's estate.

99. At no time did MSF ever obtain approval from the Bankruptcy Court to authorize its receipt of money from the Debtor's estate for any purpose and such transfer was not authorized under the Bankruptcy Code.

100. By reason of the foregoing, the Plaintiff is entitled to the entry of a judgment against MSF avoiding the $20K Transfer pursuant to 11 U.S.C. § 549(a) and recovering from MSF an amount no less than $20,000.00 for the avoided unauthorized post-petition transfer of estate property to MSF pursuant to 11 U.S.C. § 550(a)(1).

**AS AND FOR A SECOND CLAIM FOR RELIEF**
**UNDER 11 U.S.C. § 549, 550**
**($10,974.00 to MSF, Jifa, Peng)**

101. Plaintiff repeats and realleges each and every allegation set forth in paragraphs "1" through "100" as if fully set forth herein.

102. At all times relevant, the Remaining Currency was and is property of the Debtor's estate.

103. The Remaining Currency was transferred to MSF.

104. During the period of time MSF held the Remaining Currency, it had dominion and control over that money. Thus, MSF was the initial transferee of the Remaining Currency.

105. In the alternative, the Remaining Currency was transferred to Jifa.

106. In the alternative, when Jifa received the Remaining Currency and thereafter held it for approximately three (3) months, he had dominion and control over that money during that entire time. Thus, in the alternative, Jifa was the initial transferee of the Remaining Currency.

107. In the alternative, the Remaining Currency was transferred to Peng.

108. In the alternative, when Peng received the Remaining Currency and thereafter retained it, he had dominion and control over that money. Thus, in the alternative, Jifa was the initial transferee of the Remaining Currency.

109. In any event, the transfer of the Remaining Currency was done without any approval from the Bankruptcy Court to authorize the transfer of the Remaining Currency for any purpose and such transfer was not authorized under the Bankruptcy Code.

110. By reason of the foregoing, the Plaintiff is entitled to the entry of a judgment avoiding the transfer of the Remaining Currency pursuant to 11 U.S.C. § 549(a) and recovering from MSF, or in the alternative Jifa, or in the alternative Peng, an amount no less than $10,974.00 for the avoided unauthorized post-petition transfer of estate property pursuant to 11 U.S.C. § 550(a)(1).

**AS AND FOR A THIRD CLAIM FOR RELIEF**
**UNDER 11 U.S.C. §§ 549, 550**
**(Watches and $8,000.00 to MSF, Jifa, Zuoxiao)**

111. Plaintiff repeats and realleges each and every allegation set forth in paragraphs “1” through “110” as if fully set forth herein.

112. At all times relevant, the Watches and $8,000.00 of the Dollars were and are property of the Debtor’s estate.

113. The transfer of the Watches and $8,000.00 of the Dollars was done without any approval from the Bankruptcy Court to authorize the transfer of the Watches and $8,000.00 of the Dollars for any purpose and such transfer was not authorized under the Bankruptcy Code.

114. During the period of time MSF held the Watches and $8,000.00 of the Dollars, it had dominion and control over the Watches and $8,000.00 of the Dollars. Thus, MSF was the

initial transferee of the Watches and $8,000.00 of the Dollars.

115. In the alternative, the Watches and $8,000.00 of the Dollars were transferred to Jifa.

116. In the alternative, when Jifa received the Watches and $8,000.00 of the Dollars and thereafter held them for no less than six (6) days, he had dominion and control over the Watches and $8,000.00 of the Dollars during that entire time. Thus, in the alternative, Jifa was the initial transferee of the Watches and $8,000.00 of the Dollars.

117. In the alternative, the Watches and $8,000.00 of the Dollars were transferred to Zuoxiao.

118. In the alternative, when Zuoxiao received the Watches and $8,000.00 of the Dollars and thereafter retained them, he had dominion and control over the Watches and $8,000.00 of the Dollars. Thus, in the alternative, Zuoxiao was the initial transferee of the Watches and $8,000.00 of the Dollars.

119. In any event, the transfer of the Watches and $8,000.00 of the Dollars was done without any approval from the Bankruptcy Court to authorize the transfer of the Watches and $8,000.00 of the Dollars for any purpose and such transfer was not authorized under the Bankruptcy Code.

120. By reason of the foregoing, the Plaintiff is entitled to the entry of a judgment avoiding the transfer of the Watches and $8,000.00 of the Dollars pursuant to 11 U.S.C. § 549(a) and recovering from MSF, or in the alternative Jifa, or in the alternative Zuoxiao, the Watches or the value thereof in an amount to be proven at trial and $8,000.00 of the Dollars for the avoided unauthorized post-petition transfer of estate property pursuant to 11 U.S.C. § 550(a)(1).

**AS AND FOR A FOURTH CLAIM FOR RELIEF**
**<u>UNDER 11 U.S.C. § 542(a)</u>**
**(Watches and $8,000.00 - Zuoxiao)**

121. Plaintiff repeats and realleges each and every allegation set forth in paragraphs "1" through "120" as if fully set forth herein.

122. Zuoxioa as the last asserted recipient of the transfer of the Watches and $8,000.00 of U.S. Dollars belonging to the Debtor's estate has a legal obligation under Section 542(a) of the Bankruptcy Code to deliver that property to the Trustee.

123. By reason of the foregoing, pursuant to 11 U.S.C. § 542(a), the Plaintiff Trustee is entitled to a judgment directing Zuoxioa to return the Watches and the $8,000.000 of U.S. Dollars to the Trustee.

**AS AND FOR A FIFTH CLAIM FOR RELIEF**
**UNDER 11 U.S.C. § 542(a)**
**(Watches and $8,000.00 – The Debtor)**

124. Plaintiff repeats and realleges each and every allegation set forth in paragraphs "1" through "123" as if fully set forth herein.

125. In the event the Watches and/or the $8,000.00 of U.S. Dollars transferred to Zuoxioa were thereafter returned to the Debtor, the Debtor has a legal obligation under Section 542(a) of the Bankruptcy Code to deliver those assets to the Trustee

126. By reason of the foregoing, pursuant to 11 U.S.C. § 542(a), the Plaintiff Trustee is entitled to a judgment directing the Debtor to return the Watches and the $8,000.00 U.S. dollars to the Trustee.

**AS AND FOR A SIXTH CLAIM FOR RELIEF**
**(Conversion of Seized Property – MSF and Jifa)**

127. Plaintiff repeats and realleges each and every allegation set forth in paragraphs "1" through "126" as if fully set forth herein.

128. The Seized Property was and is property of the Debtor's estate.

129. As property of the Debtor's estate, the Trustee held and continues to hold the immediate superior legal right of possession in and to the Seized Property at all times on and after the Petition Date.

130. At no point in time when MSF and/or Jifa received and thereafter were in possession of the Seized Property, all of which occurred after the Petition Date, did MSF or Jifa have any legal right to be in possession of the Seized Property.

131. Neither MSF nor Jifa had the Trustee's authorization to exercise possession and dominion over the Seized Property at any point while such property was in their possession.

132. The Debtor's estate has been damaged by MSF and Jifa's conversion of the Seized Property because that property is now missing.

133. By reason of the foregoing, the Plaintiff Trustee is entitled to a judgment against MSF and Jifa for conversion of the Seized Property in an amount to be proven at trial, with the inclusion of punitive damages to the extent MSF and/or Jifa knew or should have known about the Debtor's bankruptcy case.

**AS AND FOR A SEVENTH CLAIM FOR RELIEF**
**(Conversion of Watches and $8,000.00 – Zuoxiao)**

134. Plaintiff repeats and realleges each and every allegation set forth in paragraphs "1" through "133" as if fully set forth herein.

135. The Watches and the Dollars were and are property of the Debtor's estate.

136. As property of the Debtor's estate, the Trustee held and continues to hold the immediate superior legal right of possession in and to the Watches and the Dollars at all times on and after the Petition Date.

137. At no point in time when Zuoxiao received and thereafter were in possession of the

Watches and $8,000.00 of the Dollars, all of which occurred after the Petition Date, did Zuoxiao have any legal right to be in possession of the Watches and $8,000.00 of the Dollars.

138. Zuoxiao never had the Trustee's authorization to exercise possession and dominion over Watches and $8,000.00 of the Dollars at any point while such property was in his possession.

139. The Debtor's estate has been damaged by Zuoxiao's conversion of the Watches and $8,000.00 of the Dollars because that property is now missing.

140. By reason of the foregoing, the Plaintiff Trustee is entitled to a judgment against Zuoxiao for conversion of the Watches and $8,000.00 of the Dollars in an amount to be proven at trial, with the inclusion of punitive damages to the extent Zuoxiao knew or should have known about the Debtor's bankruptcy case.

**AS AND FOR A EIGHTH CLAIM FOR RELIEF**
**(Conversion of Remaining Currency – Peng)**

141. Plaintiff repeats and realleges each and every allegation set forth in paragraphs "1" through "140" as if fully set forth herein.

142. The Remaining Currency was and is property of the Debtor's estate.

143. As property of the Debtor's estate, the Trustee held and continues to hold the immediate superior legal right of possession in and to Remaining Currency at all times on and after the Petition Date.

144. At no point in time when Peng received and thereafter were in possession of the Remaining Currency, all of which occurred after the Petition Date, did Peng have any legal right to be in possession of the Remaining Currency.

145. Peng never had the Trustee's authorization to exercise possession and dominion over the Remaining Currency at any point while such property was in his possession.

146. The Debtor's estate has been damaged by Peng's conversion of the Remaining Currency because that property is now missing.

147. By reason of the foregoing, the Plaintiff Trustee is entitled to a judgment against Peng for conversion of the Remaining Currency in an amount to be proven at trial, with the inclusion of punitive damages to the extent Peng knew or should have known about the Debtor's bankruptcy case.

**RESERVATION OF RIGHTS**

148. It is the intent of the Plaintiff to pursue any and all known and heretofore unknown claims concerning the Seized Assets. As such, Plaintiff hereby specifically reserves his right to amend this Complaint to bring any and all other claims and causes of action that he may maintain against any of the parties hereto or any other party to the extent discovery in this action or further investigation by the Plaintiff reveals such additional claims or causes of action.

**RELIEF REQUESTED**

**WHEREFORE**, the Plaintiff demands judgment against the Defendants on all causes of action as set forth and incorporated in this wherefore clause by reference, together with the costs and expenses of this action, and such other and further relief as this Court deems just, proper, and equitable under the circumstances of this case.

Dated: East Meadow, New York
June 4, 2026

**CERTILMAN BALIN ADLER & HYMAN, LLP**
Attorneys to the Chapter 7 Trustee

By: /s/ Robert D. Nosek
**RICHARD J. MCCORD, ESQ.**
**Robert D. Nosek, Esq.**
90 Merrick Avenue, 9th Floor
East Meadow, New York 11554
Phone: (516) 296-7000